ANGEL RAMOS, Plaintiff and Appellee, *v.* SECRETARY OF THE TREASURY, Defendant and Appellant.

No. 12611. Decided May 11, 1962.

408

*Hiram R. Cancio, Secretary of Justice, Arturo Estrella, and Carlos G. Látimer, Assistant Secretaries of Justice, for appellant. Víctor Gutiérrez Franqui, Luis F. Sánchez Vilella, C. Morales, Jr., and Federico Ramírez Ross for appellee.*

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo and Mr. Justice Rigau.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

In general terms the Secretary of the Treasury is barred from assessing a deficiency or to proceed to collect it by distress proceeding or judicially until he has served a notice of deficiency as provided by § 57(a)(1) of the Income Tax Act of 1924, 13 L.P.R.A. § 775(a)(1), § 272(a)(1) of the Income Tax Act of 1954, 13 L.P.R.A. § 3272(a)(1). The purpose of this provision is to give the taxpayer the opportunity to contest his tax responsibility, either administratively, if he chooses to request a hearing before the Bureau, or judicially, if he prefers to appeal to the courts to review the administrative determination. One of the acknowledged exceptions to this general rule is the case of "jeopardy assessment," that is, when the Secretary believes that the assessment or collection is jeopardized by delay, which is mentioned in § 57(c) of 1924, 13 L.P.R.A. § 775(c), and § 273 of 1954, 13 L.P.R.A. § 3273,[1] *Irizarry v. Tax Court,*

---

[1] Other exceptions to the general rule which has been set forth and which the Act of 1954 acknowledges are the following: 1—waiver written by the taxpayer of the restrictions on assessment and collection of deficiencies, § 272(d), 13 L.P.R.A. § 3272(d); 2—notification of the collection of

71 P.R.R. 178 (1950). The power acknowledged the Secretary to make a jeopardy assessment rests on his sole discretion and the grounds or reasons which assist him in making such a determination are not subject to judicial review. *Ballester* v. *Tax Court*, 60 P.R.R. 749, 754 (1942); *Ginsburg* v. *United States*, 278 F.2d 470 (C.A. 1, 1960); *Field* v. *United States*, 263 F.2d 758 (C.A. 5, 1959); *Plitt* v. *Hofferbert*, 133 F.Supp. 636 (Md. 1955); 9 MERTENS, Law of Federal Income Taxation, § 49.145; KAMINSKY, *Administrative Law and Judicial Review of Jeopardy Assessments Under the Internal Revenue Code*, 14 Tax. L. Rev. 545 (1959). The occasion when he makes use of this discretionary power more frequently is when the term of the notice of deficiency is about to prescribe and the taxpayer has denied to sign a waiver of restrictions for the assessment and collection of the taxes.

 Now, since the jeopardy assessment permits the Secretary to immediately take action against the taxpayer's property in order to make the deficiency effective,[2] a procedure has been provided which permits the taxpayer to rapidly contest the administrative determination of the assessment, and to that effect it is required that (a) if the jeopardy assessment were made *before* the taxpayer was notified of any determination of deficiency under § 57(a) of 1924, § 272(a) of 1954, the Secretary shall, within the 30 days following the date of the assessment, notify the taxpayer of said deficiency pursuant to the provisions of said paragraph; (b) if the assessment were made *after* the deficiency was notified pursuant to the provisions of said paragraph, this

additional tax due to mathematical errors appearing from the face of the taxpayer's return, § 272(f), 13 L.P.R.A. § 3272(f); 3—adjudication of bankruptcy or appointment of a trustee for taxpayer, § 274(a), 13 L.P.R.A. § 3274(a); 4—deficiency determined by the Superior Court, in case that the taxpayer fails to secure his payment by bond if he appeals to the Supreme Court, or if he is permitted to continue the appeal without filing a bond, § 272(b), 13 L.P.R.A. § 3272(b).

[2] In order to avoid the immediate collection of the tax assessment, § 57(c)(4) of 1924, corresponding to § 273(d) of 1954, permits the filing of a bond to suspend collection.

fact shall not deprive the taxpayer from the remedies granted him by virtue of the aforesaid paragraph—request for administrative hearing or judicial challenge of the deficiency; (c) if the assessment were made *before* a *final* determination of deficiency had been made, but *after* an administrative hearing had been held, the Secretary shall notify said final determination to the taxpayer within the 30 days following the date of the assessment. Section 57(c)(2) and (3) of 1924 and § 273(b) and (c) of 1954. In case (a) it has been decided that the failure to notify the deficiency within the term of 30 days produces the nullity of the jeopardy assessment. *Bell* v. *Anglim*, 29 A.F.T.R. 1456 (Cal. 1941); *Dinwiddie Lampton*, 17 B.T.A. 649 (1929); *Mrs. G. H. Connell*, 15 B.T.A. 1311 (1929); *J.H. Reese*, 15 B.T.A. 1261 (1929). In the opinion of this last case it is stated that "the situation here is in substance no different from the situation where the Commissioner, not having made a jeopardy assessment, fails to mail a deficiency notice prior to the expiration of 5 years from the date the return was filed." *Cf. Berry* v. *Westover*, 70 F. Supp. 537, 546 (Cal. 1947); *Anne Gatto*, 20 T.C. 830 (1953); *Brown-Wheeler Co.*, 21 B.T.A. 755 (1930); *Angier Corporation*, 17 B.T.A. 1376, 1387 (1929), affirmed in 50 F.2d 887, 891 (C.C.A. 1, 1931). We fail to see what distinction should be established between case (a) and case (c),[3] since as we have set forth, the purpose underlying these provisions is to give the taxpayer the immediate opportunity of fixing his true tax responsibility, and, therefore, we believe that the same consequences should be attributed to the failure of the Secretary to send the *final* notice within 30 days of the jeopardy assessment, when an administrative hearing has been held.

---

[3] Since federal jurisdiction does not authorize the holding of an administrative hearing, but instead appeals are brought directly to the Tax Court, we do not have the benefit of decisions interpreting a similar provision to that found in our § 57(c)(3) of 1924, as amended by Act No. 9 of October 8, 1954 or in § 273(c) of 1954.

On March 5, 1948 the taxpayer Angel Ramos filed his income tax return for the calendar year 1947. On May 27, 1949 he filed a claim for tax refund for the years 1946 and 1947, alleging that due to error he had omitted to include as deduction the sum of $1,110 corresponding to the depreciation of a building belonging to him which produced rents which were included in the gross income declared for the aforesaid taxable years. An investigation of the taxpayer's returns for the indicated years having been carried out, the Secretary, on June 23, 1950, notified the taxpayer *preliminary* deficiencies under the provisions of § 57(a) for the following amounts: 1946: $23,137.31; 1947: $31,669.03. On the following July 14 the taxpayer requested a reconsideration as to both taxable years. Specifically as to the year 1947 he contested three items of the adjustment to the net income, namely: (a) benefit in the sale of shares; (b) interest paid; and (c) credit for dependents; and in the memorandum explaining the reasons for the request of reconsideration, he stated that the reasons for the request of reconsideration are identical to those set forth as to the previous year, that is, the year 1946.

On January 7, 1954 the Secretary requested the taxpayer to waive the limitation for the assessment and collection of the tax for the year 1946 in view of the fact that the term of seven years which the law granted the Secretary to notify final deficiencies was about to expire. Since the taxpayer did not consent to this request, the Secretary notified him, on the following March 10, a jeopardy assessment for the year 1946. On the following March 19, and in agreement with § 62 of 1924, 13 L.P.R.A. § 780, the taxpayer filed a claim for the reduction from previous assessment, which was for the sum of $23,137.31, that is, equal to the preliminary notice of June 23, 1950, and requested an administrative hearing. On May 6 of the same year the taxpayer was sent a notice of the hearing in case No. V-4622, without expressly

identifying whether it concerned both taxable years. The hearing was held on June 4, 1954.

On August 5, 1954 an internal notice on the results of the hearing in case No. V-4622 was prepared in the Bureau, and in the caption it refers to the notices of June 23, 1950—it refers to the preliminary deficiency regarding the year 1947—and March 10, 1954—it refers to the jeopardy assessment respecting the year 1946. In the explanation of the alteration of items the following is pointed out:

| Year | According to Notice | According to Reconsideration | Difference | Observations |
|------|---------------------|------------------------------|------------|--------------|
| 1946 | $23, 137. 31 | $9, 959. 37 | $13, 177.94 | Notify in preliminary |
| 1947 | $31, 669. 03 | $3, 499. 81 | $28, 169.22 | Notify in final |

Apparently there was a certain argument in the Administrative Review Division of the Bureau as to whether the aforesaid reductions were proper, and afterwards, on September 26, 1955, the Bureau prepared another notice on the result of the hearing, which contains the following explanation:

| Year | According to Notice | According to Reconsideration | Difference | Observations |
|------|---------------------|------------------------------|------------|--------------|
| 1946 | $23, 137. 31 | $20, 774. 81 | $2, 362. 50 | Notify in final |
| 1947 | $31, 669. 03 | $28, 902. 97 | $2, 766. 06 | ——— |

Pursuant to the provisions of § 62 (b), on October 11, 1954 a notice was served on the taxpayer for the year 1946, "as a result of the administrative hearing held in relation to the request of reduction filed ... for the year 1946 with respect to the notification dated March 10, 1954, sent ... pursuant to § 57 (c)." This notification corresponds to the explanation of September 26, 1954.

Within the following 30 days the taxpayer filed a request for reconsideration respecting the deficiency of which he was

notified for the year 1946 and to that effect another administrative hearing was held on January 3, 1955. In the corresponding statement reference was made only to the year 1946. The taxpayer made the same reference in a letter of November 29, 1954 in which he requested the changing of the hearing which was finally held on the date indicated.

On March 4, 1955 the Secretary notified the taxpayer a jeopardy assessment of the taxes for the year 1947 and he referred to a deficiency of $28,902.97, that is, which corresponds to the notification on the result of the hearing, dated September 26, 1955. It should be observed that the sum of $31,669.03 was discarded as the amount of the deficiency which had been fixed in the preliminary notification of June 23, 1950. On the following March 11, the taxpayer included a bond for $10,300 stating that "we also wish to clarify that the deficiency which is the object of this bond and which corresponds to the year 1947 was previously notified in the usual way and is pending a hearing before that Bureau."

On September 27, 1955 the inspector Antonio Blanes prepared a memorandum in case No. V-4622 and refers to the different items for both years 1946 and 1947, and he concludes recommending that the final deficiencies be notified and warning that "no adjustment whatsoever has been made as a result of this memorandum." It was so done on October 14, 1955, and as to the year 1947 it was fixed at the sum of $28,902.97, that is, the same amount for which the jeopardy assessment had been made. On October 28, 1955 a letter was sent to the taxpayer's lawyer explaining that the adjustment in both taxable years consisted in reducing an item corresponding to the assignment of certain shares of the enterprise known as Puerto Rico Ilustrado, Inc.

This has been, so far, the chronological relation of the facts which give rise to the problem before us. On November 10, 1955, the taxpayer filed the corresponding complaint in

the Superior Court, San Juan Part, in order to challenge both deficiencies, in which it was specifically alleged that "while the *hearing* and *decision* of the above-mentioned deficiencies was still pending [referring to the notification of June 23, 1950 on the years 1946 and 1947] defendant, on March 4, 1955 assessed the deficiency corresponding to the year 1947 under the receipt No. F-840732," and "that after holding the corresponding administrative hearing on the deficiencies for the two afore-mentioned years, defendant, on October 14, 1955, rendered a decision upholding same on all its parts, with the exception that for 1946 he consented to a readjustment amounting to $3,375 and in 1947, amounting to $3,688.08." Both facts were accepted by the Secretary. Subsequently, on October 30, 1956 an amended complaint was filed in which it was alleged that in relation to the year 1947 an administrative hearing had been held on July 14, 1954,[4]

---

[4] The pertinent part of the allegations reads as follows:

"16. On May 6, 1954 the Secretary set the administrative hearing for the request for reduction for the year 1946 (and the reconsideration of the year 1947).

"17. On June 14, 1954 the administrative hearing was held on the deficiencies notified (on June 23, 1950) for the years 1946 and 1947.

"18. On October 11, 1954 the Secretary notified the result of the request of reduction to the taxpayer for the year 1946, sustaining in part the request of reduction and reducing the previously assessed deficiency, but made no determination whatsoever as to the year 1947.

"19. On November 9, 1954 the taxpayer filed a request of reconsideration from the denial of the petition of reduction of October 11, 1954, and which referred to 1946.

"20. On November 16, 1954 the Secretary set the hearing for the motion for reconsideration of November 9, 1954 and which referred to the year 1946, setting the latter for December 6, 1954.

"21. On December 8, 1954 he changed the date of the administrative hearing for January 3, 1955.

"22. On January 3, 1955 a second administrative hearing was held on the issues raised in relation to the motion for reconsideration of the petition of reduction for the year 1946.

"23. On March 4, 1955 the Secretary notified the assessment of the deficiencies for the year 1947, by distress proceeding collection, but it was not until October 14, 1955 that he notified his final determination for the year 1947.

but this fact was denied by the Secretary.[5] A separate hearing on this preliminary issue was requested.

 ■ From the facts already set forth it clearly appears that as to the year 1947 a preliminary notification of deficiency was made on June 23, 1950. The only issue to be decided is whether the final notification of October 14, 1955 was made after holding an administrative hearing the result of which was still pending when the assessment was made on March 4, 1955. We have carefully examined the documentary evidence which appears in the record and to which we have referred in the previous chronological summary, and its weight convinces us, as it did the trial court, that at the hearing of June 4, 1954 the items relating to both years were discussed. This fact is verified with the uncontested testimony of Juan Angel Gil, one of the taxpayer's representatives at said hearing. Otherwise it could not be explained that in the internal communications of the Bureau, it prepared two reports of the result of the hearing—on August 5, 1954 and September 26, 1955—in which reference is made to *both taxable years* and two different reductions are recommended in the deficiency notified preliminarily in 1950 for the year 1947, the first (A. Oliver Frau) of $3,499.81, and the second (Antonio Blanes) of $28,902.97. The really important fact is that in both results a reduction

"24. The taxpayer, within the term required by law, bonded the deficiency of the year 1947 assessed on March 4, 1955, under receipt No. F-840732, thus securing in their entirety the deficiencies object of this litigation.

"25. On October 14, 1955 he made the notification of his final determination on the reconsideration of the petition for reduction dated March 19, 1954, and November 9, 1954, of the year 1946, and made the notification of the final determination of his deficiency for the year 1947."

[5] Confronted with these two contradictory allegations, the Secretary, in an answer to a request of admission of facts, indicated that "it is clarified, however, that the Secretary of the Treasury committed error in accepting in its entirety what was alleged in said paragraph fifth of the original complaint and that the error was noticed upon examining again the record of this case when answering the amended complaint."

of the preliminary deficiency is recommended for the aforesaid year originally notified for $31,669.03. It is possible that this was due to the fact that the evidence introduced for the year 1946 was equally applicable to the following year, for it concerned similar items,[6] but the decisive thing is that there was a reduction. Furthermore, in the extensive memorandum prepared by inspector Blanes on September 27, the items for both years 1946 and 1947 are considered and discussed.[7] On the other hand, Act No. 9 of October 8, 1954, which amended § 57 (c) to require that in the case of jeopardy assessment made after an administrative hearing on the deficiency object of such assessment, but before its *final* determination was notified by the Secretary, the latter shall notify

---

[6] The readjustment was actually due to the fact that the Secretary allowed the deduction of $3,375 for the year 1946 and of $3,688.08 for the year 1947, which the taxpayer had paid during those years as payments under a contract in which the usufruct of certain shares in the corporation Puerto Rico Ilustrado, Inc. was granted him.

[7] From said memorandum—which served as a basis for the final notifications of October 14, 1955, we copy in part:

"On June 14, 1954 *an administrative hearing was held* on this case before Mr. Juan Ramón García (detailed information on this particular will be given hereinafter).

"On August 5, 1954 Mr. Juan B. Oliver Frau submitted a memorandum recommending that preliminary notice be sent of the deficiency determined according to the reconsideration for the year 1946 and final notice of the one determined also after reconsideration for the year *1947*. The deficiencies so determined by Mr. Oliver Frau were less than those previously notified for the aforesaid years 1946 and 1947 due to new conclusions reached by said Mr. Oliver Frau concerning certain adjustments made by the inspector in some of the items he adjusted.

"Mr. Juan Ramón García was in agreement with the recommendations made by Mr. Oliver Frau in his memorandum, except in respect to what was decided by said Mr. Oliver Frau regarding the adjustment made to the item 'Loss in the Sale of Shares' for the years 1946 and *1947* (detailed explanation on this particular will be given hereinafter).

"Mr. Rafael Martínez as well as Mr. Rogelio Muñoz Veloso were in agreement with the conclusions arrived at by Mr. García regarding the item of 'Loss in the Sale of Shares.' Then they turned to notify preliminarily the deficiency determined for the year 1946, taking into consideration the recommendations made by Mr. García. The aforesaid deficiency was notified on October 11, 1954, pursuant to § 62 (b) of Act No. 74 of 1925, as amended. (The deficiency for the year 1947 has not yet been notified finally.)"

the aforesaid final determination to the taxpayer within the 30 days following the jeopardy assessment, was approved *after* holding the administrative hearing,[8] and the possibility exists that when the jeopardy assessment was verified on March 4, 1955—one day before the expiration of the term of 7 years for the determination of a deficiency—this fact went unnoticed.

Besides, there is a very significant fact which does not permit us to sustain the Secretary's position: there is no evidence whatsoever to the effect that between the jeopardy assessment on March 4, 1955 and the *final* notification of deficiency òn October 10 of the same year an administrative hearing was held respecting the year 1947. Since the deficiency had been preliminarily notified on June 23, 1950, and the taxpayer had timely requested the reconsideration and holding of the corresponding hearing, it was necessary that before the *final* notification the hearing should have taken place. And certainly if it did not take place in the period between the jeopardy assessment and the final notification, it is logical to suppose that it had been held before March 4, 1955.

---

[8] Before its amendment by the aforesaid Act, § 57(c) read as follows:

"If the Secretary of the Treasury believes that the assessment or collection of a deficiency will be jeopardized by delay, he shall immediately assess said deficiency and make the notice and demand for the payment thereof. In such case assessment shall be made (1) without the notice provided for in subdivision (*a*) of this section, or (2) before the expiration of the thirty (30) days granted by said subdivision (*a*) for requesting reconsideration and administrative hearing on the matter, or (3) at any time prior to a resolution or any application for reconsideration and administrative hearing which may have been filed, or (4) before the expiration of the term granted to the taxpayer to appeal to the Superior Court of Puerto Rico, or (5) at any time before the resolution of the Superior Court of Puerto Rico on the merits of the case if the taxpayer has appealed to said court. If the taxpayer files no claim in abatement as provided in section 780 of this title, the deficiency so assessed (or if the claim so filed covers only a part of the deficiency, then the amount not covered by the claim) shall be paid upon notice and demand from the Secretary of the Treasury."

Having reached the conclusion that when the jeopardy assessment was made an administrative hearing had been held and that the *final* notification of deficiency for the year 1947 was not made within the term of 30 days from the date of such assessment, the latter lost all its validity and effectiveness, as we previously set forth. The final deficiency notified on October 10, 1955 was made after the term of 7 years which the law granted the Secretary had elapsed, and it has therefore, prescribed.

The judgment rendered by the Superior Court, San Juan Part, on June 11, 1958, will be affirmed.