ÁNGEL RAMOS, demandante y recurrido, *v.* SECRETARIO DE HACIENDA, demandado y recurrente.

*Número:* 12611 *Resuelto:* 11 de mayo de 1962

*Hiram R. Cancio, Secretario de Justicia, Arturo Estrella, Secretario Auxiliar, Carlos G. Latimer, Procurador Auxiliar,* abogados del recurrente; *Víctor Gutiérrez Franqui, Luis F. Sánchez Vilella, C. Morales, Jr. y Federico Ramírez Ross,* abogados del recurrido.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo y Rigau.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

En términos generales, el Secretario de Hacienda está impedido de tasar una deficiencia o proceder a su cobro por la vía de apremio o judicialmente hasta que haya remitido una notificación de deficiencia según provisto en la sección 57(a) (1) de la Ley de Contribuciones sobre Ingresos de 1924, 13 L.P.R.A. sec. 775(a) (1), sección 272(a) (1) de la Ley de Contribuciones sobre Ingresos de 1954, 13 L.P.R.A. sec. 3272(a) (1). El propósito de esta disposición es permitir al contribuyente la oportunidad de discutir su responsabilidad contributiva, bien administrativamente, si opta por solicitar

la celebración de una vista ante el Negociado, o judicialmente, si prefiere recurrir a los tribunales para revisar la determinación administrativa. Una de las excepciones a esta regla general es el caso de la tasación de "contribución en peligro", o sea, cuando el Secretario creyere que la tasación o el cobro ha de peligrar por la demora, conocida como *"jeopardy assessment"*, a la cual se refiere la sección 57(c) de 1924, 13 L.P.R.A. sec. 775(c) y la sección 273 de 1954, 13 L.P.R.A. sec. 3273,(1) *Irizarry* v. *Tribunal de Contribuciones*, 71 D.P.R. 191 (1950). La facultad que se reconoce al Secretario para la tasación de una contribución en peligro descansa en su sola discreción y los fundamentos o razones que le asisten para hacer tal determinación no están sujetos a revisión judicial. *Ballester* v. *Tribunal de Contribuciones*, 60 D.P.R. 768, 773 (1942) ; *Ginsburg* v. *United States*, 278 F.2d 470 (CA 1, 1960) ; *Field* v. *United States*, 263 F.2d 758 (CA 5, 1959) ; *Plitt* v. *Hofferbert*, 133 F. Supp. 636 (Md. 1955) ; Mertens, *Law of Federal Income Taxation*, vol. 9, sec. 49.145; Kaminsky, *Administrative Law and Judicial Review of Jeopardy Assessments under the Internal Revenue Code*, 14 Tax L. Rev. 545 (1959). La ocasión más frecuente en que se hace uso de esta facultad discrecional es cuando el término para la notificación de la deficiencia está a punto de transcurrir y el contribuyente se ha negado a firmar una renuncia (*waiver*) de las restricciones para la tasación y cobro de la contribución. ▪

_____

(1) Otras excepciones a la regla general expuesta que reconoce la Ley de 1954 son las siguientes: 1—renuncia escrita por el contribuyente de las restricciones sobre tasación y cobro de deficiencias, sec. 272(d), 13 L.P.R.A. sec. 3272(d) ; 2—notificación del cobro de contribución adicional debido a errores matemáticos que surgen de la faz de la planilla presentada por el contribuyente, sec. 272(f), 13 L.P.R.A. sec. 3272(f) ; 3—adjudicación en quiebra o nombramiento de síndico para el contribuyente, sec. 274(a), 13 L.P.R.A. sec. 3274(a) ; 4—deficiencia determinada por el Tribunal Superior, en caso de que el contribuyente no afianzare su pago si recurre al Tribunal Supremo, o se le permita continuar al recurso sin afianzamiento, sec. 272(b), 13 L.P.R.A. sec. 3272(b).

Ahora bien, como la tasación de una contribución en peligro permite al Secretario dirigirse inmediatamente contra los bienes del contribuyente para hacer efectiva la deficiencia, (²) se ha provisto un procedimiento que permite al contribuyente impugnar rápidamente la determinación administrativa de la tasación, y al efecto se requiere que (a) si la tasación de la contribución en peligro fuere hecha *antes* de haberse notificado al contribuyente determinación alguna de deficiencia bajo la sección 57 (a) de 1924, sección 272 (a) de 1954, el Secretario deberá, dentro de los 30 días siguientes a la fecha de la tasación, notificar al contribuyente dicha deficiencia de conformidad con las disposiciones de dicho inciso; b) si la tasación se hiciere *después* de haberse notificado la deficiencia conforme a las disposiciones de dicho inciso, tal hecho no privará al contribuyente de los recursos que se le conceden en virtud del referido inciso—solicitud de vista administrativa o impugnación judicial de la deficiencia; c) si la tasación se hiciere *antes* de haberse notificado una determinación *final* de deficiencia, pero *después* de haberse celebrado una vista administrativa, el Secretario deberá notificar dicha determinación final al contribuyente dentro de los 30 días siguientes a la fecha de la tasación.   Sección 57 (c) (2) y (3) de 1924 y Sección 273 (b) y (c) de 1954.   En el caso (a) se ha resuelto que la omisión de notificar la deficiencia dentro del término de 30 días produce la nulidad de la tasación de la contribución en peligro. *Bell* v. *Anglim*, 29 A.F.T.R. 1456 (Cal. 1941) ; *Dinwiddie Lampton*, 17 B.T.A. 649 (1929) ; *Mrs. G. H. Connell*, 15 B.T.A. 1311 (1929) ; *J. H. Reese*, 15 B.T.A. 1261 (1929).   En la opinión de este último caso se dice que "la situación es sustancialmente similar a aquella en que el Comisionado, sin haber hecho una tasación de una contribución en peligro, omite notificar una deficiencia antes de la expiración del período de 5 años desde la radicación de la

---

(²) Para evitar el cobro inmediato de la tasación de la contribución, la sección 57 (c) (4) de 1924, correspondiente a la sección 273 (d) de 1954, permite la prestación de fianza para suspender el cobro.

planilla." Cfr. *Berry* v. *Westover*, 70 F. Supp. 537, 546 (Cal. 1947) ; *Anne Gatto*, 20 T.C. 830 (1953) ; *Brown-Wheeler Co.*, 21 B.T.A. 755 (1930) ; *Angier Corporation*, 17 B.T.A. 1376, 1387 (1929), confirmado en 50 F.2d 887, 891 (CCA 1, 1931). No vemos qué distinción debe establecerse entre el caso (a) y el caso (c).[3] pues como hemos expuesto, el propósito que anima estas disposiciones es brindar al contribuyente la oportunidad inmediata de fijar su verdadera responsabilidad contributiva, y por tanto, creemos que deben atribuírsele las mismas consecuencias a la omisión del Secretario de enviar la notificación *final* dentro de 30 días de la tasación de una contribución en peligro cuando se ha celebrado una vista administrativa.

En 5 de marzo de 1948 el contribuyente Angel Ramos radicó su declaración sobre ingresos para el año natural 1947. En 27 de mayo de 1949 presentó una reclamación de reintegro para los años 1946 y 1947 aduciendo que por error había dejado de incluir como deducción la suma de $1,110.00, correspondiente a la depreciación de un edificio de su propiedad que produjo rentas que se incluyeron en el ingreso bruto declarado en dichos años contributivos. Efectuada una investigación de las declaraciones del contribuyente para los años indicados, en 23 de junio de 1950, el Secretario le notificó al contribuyente deficiencias *preliminares* bajo las disposiciones de la sección 57(a), por las siguientes cantidades: 1946: $23,137.31; 1947: $31,669.03. En 14 de julio siguiente el contribuyente presentó una solicitud de reconsideración en cuanto a ambos años contributivos. Específicamente en cuanto al año 1947 impugnó tres partidas del ajuste al ingreso neto, a saber: (a) beneficio en venta de acciones; (b) intereses pagados; y, (c) crédito por dependientes; y en el

---

[3] Como la jurisdicción federal no autoriza la celebración de una vista administrativa, sino que se recurre directamente a la Corte de Contribuciones, no tenemos el beneficio de decisiones interpretando una disposición similar a la contenida en nuestra sección 57(c)(3) de 1924, según enmendada por la Ley Núm. 9 de 10 de octubre de 1954, o en la sección 273(c) de 1954.

.memorándum explicativo de los fundamentos de la solicitud .de reconsideración, se expresó que los fundamentos de la solicitud de reconsideración son idénticos a los expuestos en cuanto al año anterior, o sea, el año 1946.

En 7 de enero de 1954, el Secretario solicitó del contribuyente que renunciara la limitación para la tasación y cobro de la contribución del año 1946 en vista de que estaba próximo a expirar el término de siete años que la ley le concedía al Secretario para notificar deficiencias finales. Como el contribuyente no accedió a esta solicitud, el Secretario le notificó en 10 de marzo siguiente una tasación de emergencia (*jeopardy assessment*) para el año 1946. En 19 de marzo siguiente, y de conformidad con la sección 62 de 1924, 13 L.P.R.A. sec. 780, el contribuyente presentó una reclamación de reducción de la anterior tasación que era por la suma de $23,137.31, o sea, igual a la de la notificación preliminar de 23 de junio de 1950, y solicitó la celebración de una vista administrativa. En 6 de mayo del mismo año se le envió al contribuyente un señalamiento de la vista en el caso V-4622, sin que se identificara expresamente si se refería a ambos años contributivos. La vista se celebró el día 4 de junio de 1954.

En 5 de agosto de 1954 se preparó en el Negociado una notificación interna sobre el resultado de la vista en el caso V-4622, y en el encabezamiento se refiere a las notificaciones de 23 de junio de 1950—se refiere a la deficiencia preliminar respecto al año 1947—y 10 de marzo de 1954—se refiere a la tasación de emergencia respecto al año 1946. En la explicación sobre la alteración de partidas, se indica lo siguiente:

| Año | Según Notificación | Según Reconsideración | Diferencia | Observaciones |
|---|---|---|---|---|
| 1946 | $23,137.31 | $9,959.37 | $13,177.94 | Notificar en preliminar |
| 1947 | $31,669.03 | $3,499.81 | $28,169.22 | Notificar en final |

Aparentemente surgió cierta discusión en la División de Revisión Administrativa del Negociado sobre la procedencia de las reducciones indicadas, y posteriormente se preparó en 26 de septiembre de 1955 otra notificación sobre el resultado de la vista, que contiene la siguiente explicación:

| Año | Según Notificación | Según Reconsideración | Diferencia | Observaciones |
|------|------|------|------|------|
| 1946 | $23,137.31 | $20,774.81 | $2,362.50 | Notificar en final |
| 1947 | $31,669.03 | $28,902.97 | $2,766.60 | ———— |

De acuerdo con lo dispuesto en la sección 62(b), en 11 de octubre de 1954, se le hizo una notificación al contribuyente para el año 1946, "como resultado de la vista administrativa celebrada en relación con la solicitud de reducción radicada . . . para el año 1946 con respecto a la notificación de fecha 10 de marzo de 1954, enviada . . . de acuerdo con la Sección 57(c)." Esta notificación corresponde con la explicación de 26 de septiembre de 1954. Dentro de los 30 días siguientes el contribuyente radicó una solicitud de reconsideración en relación con la deficiencia notificádale para el año 1946 y al efecto se celebró otra vista administrativa en 3 de enero de 1955. En el señalamiento correspondiente se hizo referencia al año 1946 únicamente. En igual forma se refirió el contribuyente en una carta de 29 de noviembre de 1954 en la cual solicitaba la transferencia de la vista que se celebró finalmente en la fecha indicada.

En 4 de marzo de 1955 el Secretario notificó al contribuyente una tasación de emergencia (*jeopardy assessment*) de la contribución para el año 1947 y se refirió a una deficiencia por $28,902.97, o sea, que corresponde con la notificación sobre el resultado de la vista de fecha 26 de septiembre de 1955. Debe observarse que se descartó como importe de la deficiencia la suma de $31,669.03 que se había fijado en la notificación preliminar de 23 de junio de 1950. En 11 de marzo siguiente el contribuyente acompañó una fianza por $10,300.00 haciendo constar que "deseamos aclarar además

que la deficiencia objeto de esta fianza y correspondiente al año 1947 ya se notificó previamente en la forma ordinaria y está pendiente de vista ante ese Negociado."

En 27 de septiembre de 1955 el inspector Antonio Blanes preparó un memorándum en el caso V-4622 y se refiere a las distintas partidas para ambos años 1946 y 1947, y termina recomendando que se notifiquen las deficiencias finales y advirtiendo que "no se ha hecho ajuste alguno como resultado de este memorandum." Así efectivamente se hizo en 14 de octubre de 1955, y en cuanto al año 1947, se fijó en la suma de $28,902.97, o sea, la misma cantidad por la cual se había hecho la tasación de la contribución en peligro. En 28 de octubre de 1955 se dirigió una carta al abogado del contribuyente explicando que el ajuste en ambos años contributivos consistió en rebajar una partida correspondiente a la cesión de ciertas acciones de la empresa Puerto Rico Ilustrado, Inc.

Hasta aquí la relación cronológica de los hechos que dan margen al problema que tenemos ante nosotros. En 10 de noviembre de 1955, el contribuyente radicó la correspondiente querella ante el Tribunal Superior, Sala de San Juan, para impugnar ambas deficiencias, en la cual específicamente alegó "que estando aun pendiente de *vista* y *resolución* las deficiencias antes mencionadas [se refiere a la notificación de 23 de junio de 1950 sobre los años 1946 y 1947], el demandado, con fecha 4 de marzo de 1955, tasó la deficiencia correspondiente al año 1947 bajo el recibo F-840732 . . ." y "que celebrada la vista administrativa correspondiente sobre las deficiencias de los dos años mencionados, el demandado con fecha 14 de octubre de 1955, dictó resolución sosteniendo las mismas en todas sus partes, con excepción de que para el año 1946 concedió un reajuste montante a $3,375.00 y en el 1947, montante a $3,688.08 . . ." ambos hechos se aceptaron por el Secretario. Posteriormente, en 30 de octubre de 1956 se presentó una demanda enmendada en la cual se alegó que en relación con el año 1947 se había celebrado una vista admi-

nistrativa en 14 de julio de 1954. (⁴) pero este hecho fue negado por el Secretario. (⁵) Se solicitó juicio por separado sobre esta cuestión previa. ■

De los hechos expuestos surge claramente que en cuanto al año 1947 se hizo una notificación preliminar de deficiencia en 23 de junio de 1950. El único punto que es necesario resolver es si la notificación final de 14 de octubre de 1955 se efectuó después de haberse celebrado una vista administrativa cuyo resultado se encontraba pendiente cuando se hizo la tasación en 4 de marzo de 1955. Hemos examinado con detenimiento la prueba documental obrante en los autos y a la cual hemos hecho referencia en el resumen cronológico que antecede, y el peso de la misma nos convence, al igual que al tribunal de instancia, de que en la vista del 4 de junio de 1954 se discutieron las partidas relacionadas con ambos años. Este hecho se comprueba con el testimonio no contradicho del señor Juan Angel Gil, uno de los representantes del contribuyente en dicha vista. De otra forma no se ex-

---

(⁴) La parte pertinente de las alegaciones lee como sigue:

"16. El 6 de mayo de 1954 el Secretario fijó la vista administrativa sobre la petición de reducción del año 1946 (y la reconsideración del año 1947).

"17. El 14 de junio de 1954 fue celebrada la vista administrativa sobre las deficiencias notificadas (en 23 de junio de 1950) para los años 1946 y 1947.

"18. El 11 de octure de 1954 el Secretario notificó el resultado de la solicitud de reducción al contribuyente para el año 1946, declarando con lugar en parte la petición de reducción y rebajando la deficiencia previamente tasada, pero no hizo determinación alguna en cuanto al año 1947.

"19. El 9 de noviembre de 1954 el contribuyente radicó solicitud de reconsideración de la denegatoria de la petición de reducción del 11 de octubre de 1954 y que se refería al año 1946.

"20. El 16 de noviembre de 1954 el Secretario señaló la vista sobre la moción solicitando reconsideración, del 9 de noviembre de 1954 y que se refería al año 1946, fijando ésta para el 6 de diciembre de 1954.

"21. El 8 de diciembre de 1954 cambió el señalamiento de vista administrativa anterior para el 3 de enero de 1955.

"22. El 3 de enero de 1955 se celebró una segunda vista administrativa sobre los asuntos planteados en relación a la solicitud de reconsideración de la petición de reducción del año 1946.

"23. El 4 de marzo de 1955 el Secretario notificó la tasación de la deficiencia del año 1947, por la vía de apremio, pero no fue hasta el 14

434

plicaría que en las comunicaciones internas del Negociado se prepararan dos informes del resultado de la vista—en 5 de agosto de 1954 y 26 de septiembre de 1955—en los cuales se alude a *ambos años contributivos* y se recomiendan dos distintas reducciones en la deficiencia notificada preliminarmente en 1950 para el año 1947, el primero (A. Oliver Frau) a $3,499.81, y el segundo (Antonio Blanes) a $28,902.97. El dato realmente importante es que en ambos resultados se recomienda una reducción de la deficiencia preliminar para dicho año que originalmente se había notificado por $31,669.03. Es posible que esto obedeciera a que la prueba presentada para el año 1946 fuera igualmente aplicable para el año siguiente por tratarse de partidas similares,[6] pero lo que es decisivo es que hubo una reducción. Además, en el extenso memorándum preparado por el Inspector Blanes en 27 de septiembre se consideran y discuten las partidas de ambos años 1946 y 1947.[7] Por otro lado, la Ley Núm. 9

de octubre de 1955 que notificó su determinación final para el año 1947.

"24. El contribuyente, dentro del término que requiere la ley, afianzó la deficiencia del año 1947 tasada el 4 de marzo de 1955 bajo el recibo F-840732 quedando afianzada en su totalidad las deficiencias objeto de este litigio.

"25. El día 14 de octubre de 1955 hizo la notificación de su determinación final sobre la reconsideración de la petición de reducción, fechadas el 19 de marzo de 1954 y el 9 de noviembre de 1954, del año 1946 e hizo la notificación de la determinación final de su deficiencia del año 1947.

[5] Confrontado con estas dos alegaciones contradictorias, el Secretario en una contestación a un requerimiento de admisión de hechos, indicó que "Se aclara, sin embargo, que el Secretario de Hacienda incurrió en error al aceptar en su totalidad lo alegado en dicho párrafo quinto de la demanda original y que se percató del error al examinar nuevamente el expediente de este caso al contestar la demanda enmendada.

[6] Realmente el reajuste se debió a que se le aceptó al contribuyente para el año 1946 la deducción de $3,375.00 y en el año 1947 la deducción de $3,688.08 que éste había satisfecho en dichos años como pagos bajo un contrato en que se le cedía el usufructo de determinadas acciones en la corporación Puerto Rico Ilustrado, Inc.

[7] De dicho memorándum—que sirvió de base para las notificaciones finales de 14 de octubre de 1955, copiamos en parte:

"El día 14 de junio de 1954 *se celebró una vista administrativa* de este caso ante el Sr. Juan Ramón García (más adelante se informará en detalle sobre este particular).

"Con fecha 5 de agosto de 1954 el Sr. Juan B. Oliver Frau sometió un

de 8 de octubre de 1954 que enmendó la sección 57 (c) para requerir que en el caso de una tasación de emergencia *(jeopardy assessment)* hecha después de celebrarse vista administrativa sobre la deficiencia objeto de tal tasación, pero antes de haberse notificado por el Secretario su determinación *final*, éste deberá notificar dicha notificación final al contribuyente dentro de los 30 días siguientes a la tasación de emergencia, fue aprobada con *posterioridad* a la celebración de la vista administrativa, (8) y existe la posibilidad de que cuando se verificó la tasación de emergencia en 4 de marzo de 1955—un día antes de vencer el término de 7 años para la determinación de una deficiencia—este hecho pasara por desapercibido.

Además hay un hecho sumamente significativo que no nos permite sostener la posición del Secretario: no hay prueba alguna al efecto de que entre la tasación de emergencia en 4 de marzo de 1955 y la notificación *final* de deficiencia en 10 de octubre del mismo año se celebró una vista adminis-

---

memorándum recomendando se notificara en preliminar la deficiencia determinada según reconsideración para el año 1946 y en final la determinada también según reconsideración para el año *1947*. Las deficiencias así determinadas por el Sr. Oliver Frau resultaron menores a las notificadas anteriormente para dichos años 1946 y 1947 debido a nuevas conclusiones a que llegó dicho Sr. Oliver Frau en relación con ciertos ajustes hechos por el inspector en algunas de las partidas que ajustó.

"El Sr. Juan Ramón García estuvo de acuerdo con las recomendaciones hechas por el Sr. Oliver Frau en su memorándum, excepto en lo resuelto por dicho Sr. Oliver Frau en relación con el ajuste hecho a la partida 'Pérdida en Venta de Acciones' para los años 1946 y *1947* (más adelante se explicará en detalle sobre este particular).

"Tanto el Sr. Rafael Martínez como el Sr. Rogelio Muñoz Veloso estuvieron de acuerdo con las conclusiones a que llegó el Sr. García en relación con la partida de 'Pérdida en Venta de Acciones'. Se procedió entonces a notificar en preliminar la deficiencia determinada para el año 1946, tomando en consideración las recomendaciones hechas por el Sr. García. Dicha deficiencia fue notificada el 11 de octubre de 1954, de acuerdo con la Sección 62 (b) de la Ley Núm. 74 del 1925, según ha sido enmendada. (La deficiencia del año 1947 no ha sido aun notificada en final.)

(8) Antes de ser enmendada por la ley mencionada, la Sección 57 (c) leía como sigue:

"Si el Secretario de Hacienda creyere que la tasación o cobro de una deficiencia ha de ser comprometida por la demora, inmediatamente tasará dicha deficiencia y hará la notificación y requerimiento para el pago de

trativa con respecto al año 1947. Como la deficiencia se había notificado preliminarmente en 23 de junio de 1950, y el contribuyente había solicitado oportunamente la reconsideración y celebración de la correspondiente vista, antes de la notificación *final* era necesario que la vista hubiese tenido lugar. Y claramente si no ocurrió en el período comprendido entre la tasación de emergencia y la notificación final, es lógico suponer que se había celebrado antes de marzo 4 de 1955. ■

Habiendo llegado a la conclusión de que cuando se hizo la tasación de emergencia se había celebrado una vista administrativa, y que la notificación *final* de deficiencia para el año 1947 no se verificó dentro del término de 30 días de la fecha de tal tasación, ésta perdió toda virtualidad y eficacia, según expusimos precedentemente. La deficiencia final notificada en 10 de octubre de 1955 se efectuó luego de transcurrido el término de 7 años que para ello le concedía la ley al Secretario, y está, por tanto, prescrita.

*Se confirmará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 11 de junio de 1958.*

---

la misma. En tal caso podrá hacerse la tasación (1) sin la primera notificación provista en la subdivisión (a) de esta sección, o (2) antes del vencimiento de los treinta (30) días que concede dicha subdivisión (a) para solicitar reconsideración y vista administrativa sobre el asunto, o (3) en cualquier momento antes de resolverse la solicitud de reconsideración y vista administrativa que hubiere podido radicarse, o (4) antes del vencimiento del término concedido por ley al contribuyente para apelar ante el Tribunal Superior, o (5) en cualquier momento antes de la resolución del Tribunal Superior, sobre los méritos del caso si el contribuyente hubiere apelado para ante éste. Si el contribuyente no reclamare reducción alguna según lo dispuesto en la sec. 780 de este título, la deficiencia así tasada (o si la reclamación de ese modo presentada fuere por sólo una parte de la deficiencia, entonces la cantidad no incluida en la reclamación) se pagará mediante notificación y requerimiento del Secretario de Hacienda."