ANGIER CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 25960. Promulgated November 8, 1929.

*George T. Weitzel, Esq.*, for the petitioner.
*E. J. Tonjes, Esq.*, for the respondent.

1380

## OPINION.

MARQUETTE: The respondent proposes to assess against the petitioner as a transferee of the Angier Mills and the Mansfield Company, the taxes claimed to be due from those companies for the years 1917, 1918 and 1920. This action is taken under section 280 of the Revenue Act of 1926 which provides that:

SEC. 280. (a) The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this title (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds) :

(1) The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this title or by any prior income, excess-profits, or war-profits tax Act.

(2) The liability of a fiduciary under section 3467 of the Revised Statutes in respect of the payment of any such tax from the estate of the taxpayer. Any such liability may be either as to the amount of tax shown on the return or as to any deficiency in tax.

(b) The period of limitation for assessment of any such liability of a transferee or fiduciary shall be as follows:

(1) Within one year after the expiration of the period of limitation for assessment against the taxpayer; or

(2) If the period of limitation for assessment against the taxpayer expired before the enactment of this Act but assessment against the taxpayer was made within such period, then within six years after the making of such assessment against the taxpayer, but in no case later than one year after the enactment of this Act.

(3) If a court proceeding against the taxpayer for the collection of the tax has been begun within either of the above periods—then within one year after return of execution in such proceeding.

(c) For the purposes of this section, if the taxpayer is deceased, or in the case of a corporation, has terminated its existence, the period of limitation for assessment against the taxpayer shall be the period that would be in effect had the death or termination of existence not occurred.

(d) The running of the period of limitation upon the assessment of the liability of a transferee or fiduciary shall, after the mailing of the notice under subdivision (a) of section 274 to the transferee or fiduciary, be suspended for the period during which the Commissioner is prohibited from making the assessment in respect of the liability of the transferee or fiduciary and for 60 days thereafter.

(e) This section shall not apply to any suit or other proceeding for the enforcement of the liability of a transferee or fiduciary pending at the time of the enactment of this Act.

(f) As used in this section, the term "transferee" includes heir, legatee, devisee, and distributee.

The record herein discloses that the petitioner is a transferee of the property of the Angier Mills, but that it is not an original transferee of the property of the Mansfield Co. Nor is it clear that the Angier Mills was a transferee of the property of the Mansfield Co. On this point the facts as stipulated by the parties are not as clear as might be desired, and it is difficult, if not impossible, to determine from the stipulation the circumstances under which the Angier Mills acquired the property of the Mansfield Co. However that may be, the record wholly fails to show the value of these assets, and for this reason the respondent must fail in his endeavor to hold the petitioner liable for the taxes due from the Mansfield Co.

Section 912 of the Revenue Act of 1924, added to that Act by section 602 of the Revenue Act of 1928, provides that:

SEC. 912. In proceedings before the Board the burden of proof shall be upon the Commissioner to show that a petitioner is liable as a transferee of property of a taxpayer, but not to show that the taxpayer was liable for the tax.

In discussing this provision of the statute, we said in *Ludwig Vogelstein*, 16 B. T. A. 947:

We think that the proper interpretation of section 912 of the Revenue Act of 1926, added by section 602 of the Revenue Act of 1928, is that the burden of showing the extent of the liability of a transferee of property of a taxpayer is upon the Commissioner and that the Commissioner has not borne that burden by merely showing that the petitioner, by his own admissions, has received in liquidation the assets of a dissolved corporation, which itself may have been liable for a tax, without showing what value, if any, the assets in question had at that time. See *Annie Tomoyan, et al., Trustees*, 16 B. T. A. 923.

The respondent has failed to sustain the burden cast upon him by the statute and we must, therefore, hold on the record that the petitioner is not liable for the taxes of the Mansfield Co. for the year 1918 and the period January 1 to March 31, 1920.

Coming now to the tax liability of Angier Mills for the year 1917, we find from the stipulation of facts that the return for that year was filed on March 27, 1918. The five-year period for assessment provided by the Revenue Acts of 1918 and 1921 expired on March 27, 1923, but waivers or consents were executed on behalf of the taxpayer and the additional tax was assessed on July 17, 1924. The waiver of January 20, 1923, in so far as relates to the year 1917, expired April 1, 1924 [Proclamation of Commissioner, Mim. 3085, C. B. 11-1-P-174], and the waiver of January 25, 1924, expired April 1, 1925. The deficiency was asserted against the petitioner on February 9, 1927, almost two years after the expiration of the last waiver. Unless the assessment of July 17, 1924, is valid, it is clear that the right of the respondent to assess the tax against the transferee was barred prior to February 9, 1927.

The petitioner contends that the waivers or consents executed on behalf of Angier Mills are invalid and that, therefore, the assessment of July 17, 1924, is likewise invalid, it having been made subsequent to the expiration of the five-year period for assessment provided by the Revenue Acts of 1918 and 1921. The petitioner further contends that the assessment is invalid for the reason that no 60-day deficiency notice was ever sent to the taxpayer as required by section 274 of the Revenue Act of 1924. We will first discuss the latter contention.

The Revenue Act of 1924, which became effective June 2, 1924, in so far as it is pertinent to this inquiry, provides that:

SEC. 274. (a) If, in the case of any taxpayer, the Commissioner determines that there is a deficiency in respect of the tax imposed by this title, the taxpayer, except as provided in subdivision (d) shall be notified of such deficiency by registered mail, but such deficiency shall be assessed only as hereinafter provided. Within 60 days after such notice is mailed the taxpayer may file an appeal with the Board of Tax Appeals established by section 900.

(b) If the Board determines that there is a deficiency, the amount so determined shall be assessed and shall be paid upon notice and demand from the collector. No part of the amount determined as a deficiency by the Commissioner but disallowed as such by the Board shall be assessed, but a pro-

ceeding in court may be begun, without assessment, for the collection of any part of the amount so disallowed. The court shall include in its judgment interest upon the amount thereof at the rate of 6 per centum per annum from the date prescribed for the payment of the tax to the date of the judgment. Such proceeding shall be begun within one year after the final decision of the Board, and may be begun within such year even though the period of limitation prescribed in section 277 has expired.

(c) If the taxpayer does not file an appeal with the Board within the time prescribed in subdivision (a) of this section, the deficiency of which the taxpayer has been notified shall be assessed, and shall be paid upon notice and demand from the collector.

(d) If the Commissioner believes that the assessment or collection of a deficiency will be jeopardized by delay such deficiency shall be assessed immediately and notice and demand shall be made by the collector for the payment thereof. In such case the assessment may be made (1) without giving the notice provided in subdivision (a) of this section, or (2) before the expiration of the 60-day period provided in subdivision (a) of this section even though such notice has been given, or (3) at any time prior to the final decision by the Board upon such deficiency even though the taxpayer has filed an appeal. If the taxpayer does not file a claim in abatement as provided in section 279 the deficiency so assessed (or, if the claim so filed covers only a part of the deficiency, then the amount not covered by the claim) shall be paid upon notice and demand from the collector.

The record shows that on April 28, 1924, the respondent mailed to the taxpayer a 30-day letter, notifying it of an additional tax for the year 1917, and granting 30 days within which to show cause why the deficiency should not be paid. No protest or appeal was filed by the taxpayer and on July 17, 1924, which was subsequent to the effective date of the Revenue Act of 1924, the respondent assessed the additional tax mentioned in the 60-day letter, but did not, at any time, mail to the taxpayer the 60-day letter provided by section 274 (a) of the Revenue Act of 1924. The assessment was not, and was not intended to be, a jeopardy assessment under authority of section 274 (d). Upon the facts as presented to us, considered in the light of the applicable statutes, it is our conclusion that the assessment of July 17, 1924, was made without authority of law and is void and of no force and effect. The 30-day letter of April 28, 1924, was not the final determination contemplated by section 274 of the Revenue Act of 1924. *Joseph Garneau Co.*, 1 B. T. A. 75, and *Mohawk Glove Corporation*, 2 B. T. A. 1247. The only evidence of any final determination by the respondent of the taxpayer's liability for 1917 is the fact that an assessment thereof was made in July, 1924. In *Wyoming Central Association*, 8 B. T. A. 1064, we said, in discussing a situation similar to that we are now considering:

Section 274 (subdivision (a)) provides that assessment shall be made "only as hereinafter provided." The same section subsequently provides for assessment (except in cases of jeopardy) only after decision by the Board or upon failure to appeal from a determined deficiency within 60 days after notice has been mailed to the taxpayer. In view of these provisions, and our finding that

statutory notice had not been mailed petitioner, the assessment in November was not made in compliance with the statute.

Respecting the assessment, suffice it to say that the action did not of itself constitute a determination of deficiency from which petitioner could appeal, for no notice thereof, other than the usual notice and demand for payment, was served upon petitioner. See *Joseph Garneau Co.*, 1 B. T. A. 75.

We hold that the assessment of July 17, 1924, is invalid and that assessment and collection of the tax against and from the petitioner as a transferee of the taxpayer are barred.

With respect to the additional tax claimed by the respondent to be due from Angier Mills for the year 1918, the petitioner urges that assessment and collection against and from it as a transferee are also barred. This contention in brief is that the waivers or consents for the year 1918 were executed by Edward H. Angier; that he had no authority to bind the taxpayer; that the waivers and assessments made thereunder are invalid; and that the right of the respondent to assess the tax against the taxpayer was barred at the time the deficiency notice was mailed.

The taxpayer's return for 1918 was filed on April 11, 1919. The five-year period for assessment provided by the Revenue Acts of 1918 and 1921 expired April 11, 1924. Waivers or consents were executed on behalf of the taxpayer, which, if valid, operate to extend the period for assessment, and the additional tax for 1918 was assessed within the waiver period. If the waivers and the assessments made thereunder are valid, the respondent has six years after making such assessment against the taxpayer, but in no case later than one year after the enactment of this Act (the Revenue Act of 1928), to assess against the transferee; if the waivers and assessment are invalid, then the period within which the liability could have been asserted against the transferee of the taxpayer expired prior to February 9, 1927, the date the deficiency letter was mailed to the petitioner.

The waivers under consideration were signed by Edward H. Angier as president and treasurer of the taxpayer on January 20, 1923, and January 31, 1924, respectively. Angier had sold his shares of the taxpayer's capital stock on December 31, 1920, and his last election as an officer and director was on February 14, 1920. Section 22 of Chapter 156 of the General Laws of Massachusetts provides that:

SEC. 22. Except as otherwise provided in this and the following section, the directors, treasurer and clerk shall be elected annually by ballot, by such stockholders as have the right to vote, and the president shall be elected annually by and from the board of directors. All other agents and officers shall be chosen or appointed, and all vacancies filled, in the manner prescribed in the by-laws, or, in default of such by-law, by the board of directors. Every

director, unless the by-laws otherwise provide, shall be a stockholder. The directors and other officers shall hold office for one year and until their successors are chosen and qualified, except that a corporation may, by its articles of organization or by an amendment to such articles adopted as provided in this chapter, divide its directors into classes and prescribe the tenure of office of the several classes and the class of stock by which each class of directors shall be elected; but no class shall be elected for a shorter period than one year or for a longer period than five years, and the term of office of at least one class shall expire in each year.

The Supreme Court of Massachusetts, in discussing the effect of a statute containing practically the same language as " until their successors are chosen and qualified," said, in *Chelmsford* v. *Demarest*, 73 Mass. (7 Gray) :

What then is the legal effect of the added clause "until others are chosen and qualified." To give it the construction contended for by the plaintiffs would annul the previous clause making it annual. But both are embraced in the same sentence, they are equally imperative and obligatory, and if possible both must have their legal effect. * * * The law having directed that such officer must be chosen annually, or at the annual meeting, it assumes and presupposes that such direction will be complied with, and then the words in question must be construed to mean, till the next annual meeting and such reasonable time afterwards as shall be sufficient to enable the officer-elect to procure and deliver his bond, and do whatever else is required to complete his qualification; or if he fails thus to qualify, until the corporation can elect another and cause him to be qualified. In this way both parts of the provision of the statute will have their legal and proper effect.

It thus appears that Angier, having last been elected an officer of the taxpayer on February 14, 1920, continued to be such officer, assuming that he could be an officer without at the same time being a stockholder, only until February 14, 1921, and such reasonable time afterward as might have been necessary for his successor to be elected and qualified. We consider that more than " a reasonable time afterward " elapsed before the waivers herein were executed by Angier, and that he was not at the time he executed them an officer of the taxpayer and that he had no authority to act for it. It may be argued that Angier was the president of the petitioner, which was the sole stockholder of the taxpayer, and that his action was binding on the taxpayer. This argument is effectually answered by the decision of the Board in *Bamburg Cotton Mills Co.*, 8 B. T. A. 1236, wherein it was held that a waiver or consent signed by a successor corporation was not valid and did not stop the running of the statute of limitations as to the predecessor corporation. In that case it was said:

The respondent's counsel apparently attaches some significance to the fact that the Santee Mills assumed all of the liabilities and obligations of the petitioner. The Santee Mills has not disputed the fact that it assumed the liabilities and obligations of the petitioner, but we are of the opinion that the fact that the Santee Mills was liable for the debts and obligations of the peti-

tioner does not give it the right to execute consents without the express sanction of the state legislature in such cases, or some authorized delegation of power from the trustees in dissolution. The Santee Mills, even though it was the sole stockholder of the petitioner, has no more right to execute a consent for the petitioner than a stockholder has to bind a corporation by any other form of agreement or contract.

We are of opinion that the waivers executed on behalf of the taxpayer for the year 1918 and the assessment made thereunder are invalid and that, therefore, the period within which the tax liability of the taxpayer could have been assessed against the petitioner expired prior to the date of the deficiency letter herein.

The last question is whether the respondent may assess against the petitioner the taxes due from the Angier Mills and its affiliated companies for the year 1920. The petitioner contends that the jeopardy assessment of March 8, 1926, is void for the reasons (1) that the 60-day notice required by section 279 (b) of the Revenue Act of 1926 was not mailed to the taxpayer within 5 years from the date the return was filed, and (2) because the tax was not apportioned among the affiliated companies on the basis of net income properly assignable to each, and that assessment of the tax against the petitioner is barred.

We are of opinion that the first contention is without merit. It is not necessary that the respondent assess the tax against the transferor before proceeding against the transferee. *Woodley Petroleum Co. et al.*, 16 B. T. A. 253. It is sufficient if he proceeds against the transferee within the period provided by the statute therefor. Assuming that the assessment is invalid as the petitioner urges it is, it does not follow that the respondent is precluded from asserting the liability of the taxpayer against the petitioner. The taxpayer's return for 1920 was filed on March 15, 1921, and the five-year period for assessment of the tax allowed by the Revenue Act of 1918 and subsequent Revenue Acts expired on March 15, 1926, which was after the effective date of the Revenue Act of 1926, and the deficiency notice was mailed to the petitioner within one year from the expiration of the five-year period. Section 280 (b) of the Revenue Act of 1926 provides as above set forth that:

The period of limitation for assessment of any such liability of a transferee or fiduciary shall be as follows:

(1) Within one year after the expiration of the period of limitation for assessment against the taxpayer; * * *

We are of opinion that the proceeding against the petitioner is timely and that the assessment of the tax is not barred.

We find that in part the second point raised by the petitioner as to the year 1920 is well taken. The record shows that the entire tax liability of the taxpayer and its affiliated companies was as-

sessed against the taxpayer; that there was no agreement that the tax should be so assessed instead of being assessed against the affiliated companies on the basis of net income properly assignable to each, and that there was no notice to the respondent to assess the whole tax against the taxpayer. In *Cincinnatti Mining Co.*, 8 B. T. A. 79, and *Aragon Mills*, 17 B. T. A. 257, we held that where no agreement was had between corporations as to the apportionment of the tax to be assessed on the basis of a consolidated return, and where the one corporation had not agreed to assume the tax liability of the other, it was mandatory upon the Commissioner to assess the tax upon the basis of the net income properly assignable to each. The facts of this situation bring it squarely within the scope of those decisions. The respondent, therefore, erred in assessing the entire tax of the Angier Mills and its affiliated companies against the Angier Mills. However, the fact that the respondent erred in this particular does not invalidate this entire proceeding as to 1920. It only makes it necessary to determine that portion of the tax of the affiliated group assessable to the Angier Mills on the basis of the net income properly attributable to it, and the amount so determined may be asserted against the petitioner.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*